UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


STEVEN CLAY,

        Plaintiff,

v.                                    Case No. 2:04-cv-45
                                    HON. RICHARD ALAN ENSLEN

PHYLLIS M. LAKE, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

      Plaintiff Steven Clay, an inmate currently confined at the Macomb Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants include Phyllis M. Lake and Jeannine L. Macleod, both of whom were employed in the Mail Room at the Ojibway Correctional Facility during the pertinent time period.

      Plaintiff's complaint alleges that Defendants unlawfully opened his legal mail and read it outside his presence on the following dates:  May 27, 2003, June 4, 2003, July 3, 2003, August 14, 2003, August 21, 2003, and October 17, 2003.  These pieces of mail were addressed to Plaintiff and were clearly marked as having been sent by the "Third Judicial Circuit of Michigan," the "State Appellate Defender's Office," and the "Honorable Timothy M. Kenny."  Plaintiff asserts that all of the legal mail at issue involved his attempts to appeal his criminal conviction.

      Plaintiff claims that Defendants' actions violated his rights under the First Amendment to the United States Constitution.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

- 2 -

In their motion for summary judgment, Defendants state that following the terrorist attacks of September 11, 2001, and the anthrax mail scares, the Director of the MDOC issued a memorandum modifying Policy Directive 05.03.118, which governs prisoner mail. Defendants attach a copy of the modified rule, which required that all incoming mail be opened in one location at each Department worksite, such as a mailroom. The memorandum further provided:

> PD 05.03.118 permits prisoners in correctional facilities to have their incoming legal mail opened in their presence upon written request. Since all incoming mail now must be opened in one location and other special precautions may be taken when opening mail (e.g., protective gloves, particulate masks), legal mail to a prisoner will no longer be opened in the prisoner's presence under any circumstances.

(*See* Exhibit A to Defendants' motion for summary judgment.)

On November 6, 2001, the MDOC issued emergency rules with the Michigan Secretary of State, which suspended the practice of opening legal mail in the presence of inmates and deleted from Administrative Rule R 791.6603 the requirement that legal mail be opened in a prisoner's presence. (*See* Exhibit B to Defendants' motion for summary judgment.) On April 22, 2002, the Emergency Rules were extended for six months after May 6, 2002. (*See* Exhibit C to Defendants' motion for summary judgment.) On May 1, 2002, Policy Directive 05.03.118 governing prisoner mail was revised to comport with the Emergency Rules. (*See* PD 05.03.118, ¶ BB and ¶ CC (Eff. date 5/1/02), Exhibit D to Defendants' motion for summary judgment.) On November 1, 2002, Policy Directive 05.03.118 governing prisoner mail was revised to conform with the amendments to R 791.6603. (*See* PD 05.03/118, ¶ DD and ¶ EE (Eff. date 11/1/02), Exhibit F to Defendants' motion for summary judgment.)

On April 29, 2002, the Michigan Attorney General filed with this court a stipulation of the parties in *Hadix v. Johnson*, No. 4:92-cv-110, and *Knop v. Johnson*, 1:84-cv-651, that the

- 3 -

MDOC's May 1, 2002 policy directive controlling prisoner legal mail comported with the requirements of Section VI-10 of the consent decree and others of the court. (*See* Exhibit G to Defendants' motion for summary judgment.) The court approved the stipulation on May 2, 2002, and all the legal claims in both *Hadix* and *Knop* were dismissed by the court on September 10, 2002. (*See* Exhibits E-J to Defendants' motion for summary judgment.)

However, in *Mallory-Bey v. MDOC, et al.*, No. 1:04-cv-137 (W.D. Mich.), the court found that this issue was controlled by the Sixth Circuit's decision in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003). (*See* the court's partial judgment in *Mallory-Bey v. MDOC, et al.*, No. 1:04-cv-137 (W.D. Mich.), which is attached to the motion for summary judgment as Exhibit K.) In *Sallier*, the court stated:

> We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights. *See Kensu*, 87 F.3d at 174 (referring to a prisoner's right to protect the contents of correspondence with an attorney as a "fundamental right"). There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise.

*Id.* at 877-78.

*Sallier* was decided on September 18, 2003, well after the events of September 11, 2001. As noted by the court in *Mallory-Bey v. MDOC, et al.*, No. 1:04-cv-137, nothing in the *Sallier* opinion limited this holding to pre-9/11 policies or circumstances. Thus, the court concluded in *Mallory-Bey* that the MDOC policy allowing inmates' legal mail to be opened outside their presence despite their specific requests otherwise was unconstitutional. *Id.*

As noted above, Plaintiff alleges that Defendants unlawfully opened his legal mail and read it outside his presence on multiple dates from May 27, 2003, until October 17, 2003. This

conduct occurred under the policy that the court found to be unconstitutional in *Mallory-Bey v. MDOC, et al.*, No. 1:04-cv-137, on April 15, 2005.

Defendants initially claim that they are entitled to dismissal of Plaintiff's claims against them because they were merely following MDOC policy. However, the fact that Defendants' unconstitutional conduct was dictated by policy does not change the fact that they violated Plaintiff's First Amendment right not to have his legal mail opened outside his presence once he requested otherwise. Therefore, this contention lacks merit.

Defendants further claim that Plaintiff's request for declaratory relief is moot. Defendants note that the court has permanently enjoined the MDOC from opening legal mail, as noted above, and that the MDOC has now changed its policy to comply with the court's order. Defendants attach a copy of a MDOC Director's Office Memorandum dated April 18, 2005, setting forth this requirement. (*See* Exhibit O to Defendants' motion for summary judgment.) The court notes that a change in departmental policy which constitutes the voluntary cessation of allegedly illegal conduct does not deprive a tribunal of power to hear and determine a case, i.e., it does not make the case moot. There is a public interest in having the legality of a practice settled, which militates against a finding of mootness. Where the defendants have not admitted that the challenged activity is illegal or demonstrated conclusively that the wrong will not be repeated, the case cannot be considered moot. *Monroe v. Bombard*, 422 F. Supp. 211, 215 n. 5 (S.D. New York 1976) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-633 (1953)). However, the legality of the practice at issue in this case has been decided, as noted above, and the cessation of the illegal conduct was the result of that decision. There is no longer any public interest in a declaratory judgment on this issue. Therefore, in the opinion of the undersigned, Plaintiff's claim for declaratory relief is properly dismissed as moot.

- 5 -

As noted by Defendants, Plaintiff stated in his "First Amended Complaint" that he was seeking damages for mental anguish.  Defendants claim that Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e) because Plaintiff failed to show that he suffered from any physical injury.  Section § 1997e(e) provides as follows:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Id.*

The Sixth Circuit has, albeit in an unpublished decision, rejected the physical injury requirement of § 1997e(e) when the underlying claim is for a violation of the First Amendment or other right not typically involving physical injury.  *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000).  In so holding, the Sixth Circuit relied on the Ninth Circuit's decision in *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998).  As stated in *Canell*, "[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." 143 F.3d at 1213.  *See also Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (no requirement of physical, mental or emotional injury for First Amendment claim because deprivation of First Amendment rights standing alone is a cognizable injury); *Amaker v. Haponik*, 1999 WL 76798, at *7 (S.D.N.Y.) (§ 1997e(e) did not bar plaintiff's First Amendment claims); *Mason v. Schriro*, 45 F. Supp. 2d 709, 720 (W.D. Mo.1999) (§ 1997e(e) does not apply to Equal Protection claims under the Fourteenth Amendment); *Lewis v. Sheahan*, 35 F. Supp. 2d 633, 637 n. 3 (N.D. Ill.1999) (§ 1997e(e) does not bar a right of access claim); *Friedland v. Fauver*, 6 F.Supp.2d 292 (D.N.J. 1998) (§ 1997e(e) did not bar claim for unconstitutional incarceration following arrest without probable cause); *Warburton v. Underwood*, 2 F.Supp.2d 306, 315 (W.D.N.Y. 1998) (declining to dismiss Establishment Clause claim under §

1997e(e) for want of plaintiff's showing of physical injury because "such claims nevertheless deserve to be heard").

Therefore, the undersigned opines that although § 1997e(e) bars Plaintiff's claims for compensatory damages for "mental anguish," it does not bar his claims for compensatory damages related to the underlying violation of his First Amendment rights.

Finally, Defendants claim that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An

official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom, Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will

establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal

pursuant to Rules 12(b)(6) or 56.  *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991).  In the

Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his

Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676

(1987).  However, once the affirmative defense is raised, plaintiff must come forward with such

additional facts as would establish the requisite state of mind).  *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity.  For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable.  It is in this sense that a heightened standard attaches to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

As noted by the court in *Mallory-Bey v. MDOC, et al.*, No. 1:04-cv-137, the Sixth

Circuit's decision in *Sallier* made it clear that there was no "penological interest or security concern"

that justified opening a prisoner's legal mail outside the prisoner's presence when the prisoner had

specifically requested otherwise.  343 F.3d at 877-78.  All but one of the incidents complained of

by Plaintiff occurred prior to the Sixth Circuit's September 18, 2003, decision in *Sallier*.  In the

opinion of the undersigned, Defendants are entitled to qualified immunity with regard to those

incidents which occurred prior to *Sallier*.  However, for the reasons set forth above, Defendants are

not entitled to qualified immunity on the October 17, 2003, incident, which occurred after *Sallier*.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment with regard to the incidents which occurred prior to the Sixth Circuit's September 18, 2003, decision in *Sallier*. However, Defendants are not entitled to summary judgment with regard to their conduct which occurred on October 17, 2003.   Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #52) be granted, in part, and that all of Plaintiff's claims, except for those claims which arose from the October 17, 2003, incident, be dismissed.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 8, 2006

- 11 -